[No. B010207. Second Dist., Div. Five. Nov. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LOVELL BROWN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 (b) and 976.1, this opinion is certified for publication with the exception of that portion of the opinion commencing with the heading "The Facts Relevant to the Charge of Attempted Burglary on April 18, 1984," including the "Discussion" thereof.

COUNSEL

Russell Iungerich, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and William R. Weisman, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

MINTER, J.,*—Defendant appeals from a judgment, after jury verdicts, convicting him of all charges contained in a 14-count amended information and finding that all enhancement allegations were true except the allegation in count VI.

Defendant contends that: (1) there is insufficient evidence that he intentionally inflicted great bodily injury upon Mary M. (M.) in the commission of the forcible rape charged in count VII; and (2) there is insufficient evidence to support his conviction of attempted burglary as charged in count XIV.

### THE FACTS RELEVANT TO THE CHARGE OF FORCIBLE RAPE OF M.

On March 30, 1984, M.; age 65, resided in Inglewood, California, with Ralph Occhepent (Occhepent), a male boarder, age 70 or older. At approximately 7:15 p.m. Occhepent went to the store and M. was at home alone. When Occhepent returned approximately 45 minutes later, he knocked on the door and M. opened it to allow him to enter. Another man was immediately behind Occhepent and that man forced his way into the house. At trial, M. identified Lovell Brown (appellant) as the person who forced entry into her home.

Upon entry, appellant pushed both M. and Occhepent back into the living room. Occhepent fell onto a couch, at which time appellant told Occhepent to go into the bedroom, get on his knees and put his hands behind his head. Appellant then told M. and Occhepent that he would kill them if they made any noise. He then pushed M. into the bedroom where Occhepent sleeps and began searching through drawers in a bureau. After dumping the contents of the drawers on the bed he kept repeating the word "crap." M. testified that the appellant took a watch she kept in the bureau.

---

*Assigned by the Chairperson of the Judicial Council.

Appellant then pushed M. back into the living room where her bed is located. The house is very small, consisting of one bedroom, a living room, small kitchen and a bath. Appellant told M. to stand there and he started to unbutton her blouse. Then he said, "Well, you do it." M. being frightened, complied and removed all of her clothes. Appellant then ordered her to lie down on the bed and she did so. He then repeated his prior warning, not to make noise or he would kill her. Appellant attempted to enter M.'s vagina with his penis but was unable to do so. He got up from the bed and went into Occhepent's bedroom and obtained a jar of Vaseline kept there by Occhepent. Appellant returned to M.'s location in the living room and applied the Vaseline to his penis and attempted again to enter M.'s vagina without success. He then applied additional Vaseline to his penis and forcefully entered her vagina. M. testified that at that time she experienced great pain and "felt a tearing inside." Although she was in pain, M. did not cry out or tell appellant that he was hurting her because she was in fear of her life.

After appellant terminated intercourse, M. continued to feel pain and was bleeding from the vagina. Appellant wiped himself and then ordered Occhepent, who had been crouching in the corner of his bedroom at appellant's direction, to come into the living room.

Appellant obtained three cans of beer from the refrigerator and gave M. and Occhepent each a can of beer and then he proposed a toast by lifting his beer and stating, "salute, we have a good time." Appellant left the house and M. and Occhepent waited approximately 20 minutes before seeking help from the police.

M. went to the hospital for treatment, remaining there from 1 a.m. until about 3 p.m. Five to six sutures were required to close a laceration in M.'s vagina, about 2.5 centimeters in length. Dr. Chandler, the treating physician, described M.'s vaginal area as "pretty bloody, bludgeoned, smashed" and the injury sustained as "quite a severe trauma." He further indicated that there would be very significant pain and discomfort as the wounds heal over a several week period. In addition he believed there was a possibility of scarring which could cause a stricture of the urinary meatus, probably interferring with her ability to urinate.

M. testified that she took pain medication prescribed by her physician daily for three to four weeks because of the pain and discomfort she experienced as the result of the injuries she sustained during the rape.

### DISCUSSION

In this case it is clear that the injuries to M. were neither trivial, insubstantial, transitory or short lived, nor were they the type of injuries

inherent in the commission of a rape. (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 587 [146 Cal.Rptr. 859, 580 P.2d 274].) They were, in the language of Penal Code section 12022.7, significant or substantial physical. injuries. (*People* v. *Williams* (1981) 115 Cal.App.3d 446, 454-455 [171 Cal.Rptr. 401].) We find there is sufficient evidence to support the jury's finding that appellant inflicted great bodily injury upon M. during the commission of the crime of rape. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 107 [192 Cal.Rptr. 748, 665 P.2d 520].)

 Appellant contends that there was insufficient evidence to support the jury's finding that he *intentionally inflicted* great bodily injury upon his victim during the commission of the rape.

Penal Code section 12022.8 does not require a finding that the perpetrator of the crime *intentionally* inflicted great bodily injury on the victim. (2 Witkin, Cal. Crimes (1985 supp.) Punishment for Crime, § 1025A(f), p. 517.)

The sentence enhancement set forth in Penal Code section 12022.8 shall be imposed, in addition to the sentence provided for a conviction of any offense listed in the section, if the trier of fact finds that the person who committed the crime inflicted great bodily injury upon the victim during the commission of the crime.

## LEGISLATIVE HISTORY

A review of available material regarding the legislative history of Senate Bill No. 13, 1979 Regular Session (Stats. 1979, ch. 944, § 18, p. 3263), which included an amendment to Penal Code section 12022.7[1] and the enactment of Penal Code section 12022.8, reveals that members of the Assembly were aware that the proposed section 12022.8 differed from section 12022.7. A bill analysis prepared for the Assembly Committee on Criminal Justice pointed out that the latter section required intentional and personal infliction of great bodily injury while section 12022.8 permits vicarious liability and requires no specific intent.[2]

---

[1] The 1979 amendment to Penal Code section 12022.7 inserted, in the third paragraph, inapplicability of the section to violations of Penal Code sections 451 or 452.

[2] The bill analysis of Senate Bill No. 13, as amended July 5, 1979 (1979 Reg. Sess.), prepared for the Assembly Committee on Criminal Justice, states, in part, in paragraph 5(a), page 9 (referring to the proposed Pen. Code, § 12022.8): "Current law—provides that the infliction of GBI be personally accomplished (no vicarious liability) and that the act causing the injury be intentional. The GBI provision is silent as to these two elements. What is the intent?"

We conclude that since members of the Assembly that reviewed and voted upon the proposed bill failed to include the requirement of intentional infliction of great bodily injury in section 12022.8 after its absence from the legislation was brought to their attention, the omission of the requirement of specific intent was purposeful.

It is apparent that the Legislature intended that there be an enhancement of five years upon any sentence imposed for a violation of certain sex offenses listed in Penal Code section 12022.8 if the defendant inflicted great bodily injury upon the victim during the commission of the offense regardless of whether the defendant intended to inflict such injury.

The district attorney, in drafting count VII of the amended information, alleged the enhancement allegation incorrectly.[3]

The case was tried under the misconception that the jury was required to find beyond a reasonable doubt that appellant specifically intended to inflict great bodily injury upon M. during the commission of the rape. The court read CALJIC instruction No. 17.20.1 to the jury.[4] The instruction incorrectly states the law as it pertains to Penal Code section 12022.8. Therefore, it was error for the court to give the instruction without modification, i.e., by striking the reference to specific intent.

Appellant failed to demur to the amended information or to object to the language of the pleading. (See Pen. Code, § 1012; *People* v. *Welton* (1922) 190 Cal. 236, 240 [211 P. 802].) In any event, the error inured to appellant's benefit and he sustained no prejudice.

---

[3]"It is further alleged that in the commission of the above offense the said [appellant], LOVELL BROWN, with the intent to inflict such injury, personally inflicted great bodily injury upon, Mary M., not an accomplice to the above offense, within the meaning of Penal Code section 12022.8."

[4]CALJIC instruction No. 17.20.1 as read to the jury stated: "It is charged in count VII that in the commission of rape the [appellant], with specific intent to inflict such injury, personally inflicted great bodily injury on Mary M.

"If you find the [appellant] guilty of rape, it then will be your duty to determine whether or not the [appellant], with the specific intent to inflict such injury, did personally inflict great bodily injury, as herein defined, on Mary M. in the commission of rape. The burden is on the People to prove this beyond a reasonable doubt.

"If the amount of force used in the commission of the rape has resulted in a significant or substantial physical injury to any part or portion of the body, the injury would constitute great bodily injury within the meaning of this instruction.

"Rape does not in and of itself constitute great bodily injury as just defined. Minor or moderate injuries of a temporary nature, inherent in the crime of rape do not constitute great bodily injury within the meaning of this instruction.

"You will include a finding on this charge in your verdict, using a form that will be supplied for that purpose."

■ Although we have concluded that Penal Code section 12022.8 does not require a finding of specific intent to inflict great bodily injury, the nature and extent of the injuries sustained by M. and the actions of the appellant support the jury's finding that appellant specifically intended to inflict great bodily injury upon M. during the commission of the rape. (*People* v. *Bass* (1983) 147 Cal.App.3d 448, 456 [195 Cal.Rptr. 153].) Two attempts to introduce his penis into M.'s vagina failed but appellant persisted until on the third try he forced entry by tearing M.'s vaginal area.

The jury impliedly found that appellant was aware that he was unable to penetrate M.'s vagina without the use of force likely to cause a tearing of tissue. (*Hall* v. *Municipal Court* (1974) 10 Cal.3d 641, 643 [111 Cal.Rptr. 721, 517 P.2d 1185].)

A review of the entire record in the light most favorable to the judgment discloses substantial evidence upon which the jury as a reasonable trier of fact could find that the enhancement allegation in count VII is true beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R. 4th 1255].)

Appellant refers in his opening brief to an apparent inconsistency in the jury's verdicts. The jury found the appellant guilty of the crime of burglary as alleged in count VI of the amended information (the entry into the M. residence on Mar. 30, 1984). It also found that the allegation in count VI, that appellant, with intent to inflict such injury, personally inflicted great bodily injury upon M. is not true. The jury found a similar allegation in count VII, that appellant in the commission of the crime of forcible rape, with intent to inflict such injury, personally inflicted great bodily injury upon M. to be true. The burglary and rape were committed at the same location on the same date.

Although appellant cited no authority on the subject, we will address the issue of inconsistent findings by the jury. ■ Penal Code section 954 provides in part: "An acquittal of one or more counts shall not be deemed an acquittal of any other count."

Although the enhancement allegations contained in counts VI and VII of the amended information do not charge separate offenses, the principles found in Penal Code section 954 and the cases interpreting the statute are applicable in resolving the issue of the apparent inconsistency between the "not true" finding as to the enhancement allegation contained in count VI and the "true" finding as to the enhancement allegation contained in count VII. (*People* v. *Lopez* (1982) 131 Cal.App.3d 565, 569-571 [182 Cal.Rptr. 563].)

.The statutory language of Penal Code section 954 means that each count of an information must stand upon its own merit and be weighed separately in its disposition; a verdict of either conviction or acquittal upon one count has no bearing upon the verdict with respect to another count. A verdict of conviction on one count which appears inconsistent with a verdict of acquittal on another count shall afford no basis for a reversal where the evidence is sufficient to support the conclusion that the defendant is guilty of the offense of which he stands convicted, regardless of how similar the facts underlying each count may be. (*People* v. *Amick* (1942) 20 Cal.2d 247, 251-252 [125 P.2d 25]; *People* v. *Keltie* (1983) 148 Cal.App.3d 773, 785-786 [196 Cal.Rptr. 243].)

The evidence was plainly sufficient to support appellant's conviction of forcible rape and the jury's finding that appellant intentionally inflicted great bodily injury upon M. during the commission of the rape. The negative finding on the enhancement allegation contained in count VI was a determination more favorable to the appellant than the evidence warranted. It does not compel reversal of the jury's finding on the enhancement allegation contained in count VII. (*People* v. *Amick, supra,* 20 Cal.2d at p. 252; *People* v. *Gottman* (1976) 64 Cal.App.3d 775, 780-781 [134 Cal.Rptr. 834].)

THE FACTS RELEVANT TO THE CHARGE
OF ATTEMPTED BURGLARY ON APRIL 18, 1984.*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Hastings, Acting P. J., and Eagleson, J., concurred.

---

*See footnote, *ante,* page 762.